UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kyle Snow,
      Plaintiff

      v.
                                    Case No. 25-cv-548-SM-TSM
                                    Opinion No. 2026 DNH 035
BeyondTrust Corporation,
      Defendant


**O R D E R**


Kyle Snow brings this action against his former employer, BeyondTrust, alleging that it interfered with his right to take leave under the Family and Medical Leave Act ("FMLA") (count one), and then terminated his employment in retaliation for having taken FMLA leave (count two).  BeyondTrust moves to dismiss Snow's complaint, saying neither count plausibly alleges the essential elements of a viable FMLA claim.  See generally Fed. R. Civ. P. 12(b)(6).  Snow objects.

For the reasons discussed, BeyondTrust's motion to dismiss is granted, albeit without prejudice to Snow's ability to file an amended complaint with respect to count two.

**Standard of Review**

When considering a motion to dismiss, the court accepts all well-pleaded facts alleged in the complaint as true, disregards legal labels and conclusions, and resolves reasonable inferences in the plaintiff's favor. See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017). The court may also consider documents referenced by or incorporated into the complaint, as well as documents whose authenticity is not disputed by the parties. See, e.g., Sierra v. Bisignano, 158 F.4th 43, 49 (1st Cir. 2025); Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018).

To avoid dismissal, the complaint must allege sufficient facts to support a "plausible" claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To satisfy that plausibility standard, the factual allegations in the complaint, along with reasonable inferences drawn from those allegations, must show more than a mere possibility of liability – that is, "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Lyman v. Baker, 954 F.3d 351, 359-60 (1st Cir.

2020) ("For the purposes of our [12(b)(6)] review, we isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.") (citation and internal punctuation omitted).

In other words, the complaint must include well-pled (i.e., non-conclusory, non-speculative) factual allegations as to each of the essential elements of a viable claim that, if assumed to be true, allow the court to draw the reasonable and plausible inference that the plaintiff is entitled to the relief sought. See Tasker v. DHL Retirement Savings Plan, 621 F.3d 34, 38-39 (1st Cir. 2010).

## Background

Accepting the complaint's factual allegations as true - as the court must at this juncture - the relevant background is as follows.  Snow worked for BeyondTrust for approximately seven years as a technical support engineer.  He performed his job well and each year he received a merit-based salary increase. In 2023, he suffered from serious mental health issues and required medical leave.  In September of that year, he "applied

for leave under Defendant's FMLA and short term disabilities policies." Complaint (document no. 1) at para. 20. That request was processed through Symetra, BeyondTrust's leave administrator, and Snow was approved for FMLA leave for the twelve-week period extending from September 14 through December 6, 2023.

On November 2, 2023, Snow was reminded that his FMLA leave would expire on December 7, and unless he was approved for additional leave, he might be expected to return to work on that date. See Email entitled "Exhaustion of Leave" from Symetra to Kyle Snow (document no. 9-3). On December 7, 2023, after Snow's FMLA leave had expired, BeyondTrust's leave administrator contacted Snow about his return to work. She noted that Snow's medical providers had not yet released him to work and she asked about Snow's anticipated return. She also requested additional medical information from his healthcare providers. Complaint at para. 26. See also Email entitled "Confirming Return to Work," from Rakeyla Young to Kyle Snow (document no. 1-3). Ms. Young also recommended that Snow explore the availability of long-term disability since "your healthcare provider hasn't released you

4

to return and is extending your leave past the supported time of short-term disability."  Finally, she told Snow that she would inform BeyondTrust's human rights administrator of their conversation to "figure out the next steps as a company."  Id. There is no suggestion anywhere in the complaint that BeyondTrust approved (or that Snow even sought) any additional medical leave beyond the expiration of his FMLA leave.

The following day (December 8, 2023), Snow's healthcare provider completed a work release form, stating that Snow was not yet able to return to work and would need an additional five weeks of leave through January 15, 2024.  Complaint at para. 30. See also Work Release Form (document no. 1-3) at 5.  According to Snow, he "reasonably expected that, based on Ms. Young's email and the instructions he had received, Defendant would review the updated medical information, consider options, and work with him on a safe return to work plan when he was medically able to return."  Id. at para. 32.  That did not happen.  Instead, on December 19, 2023 - twelve days after Snow's FMLA leave had expired and while he remained unable to return to work - BeyondTrust's human resources representative contacted Snow and told him that the company had decided to

terminate his employment.  Complaint at para. 33.  Snow was told that the decision to fire him was a "business decision only" and not related to his performance.  He was also told that BeyondTrust had "already waited long enough" for him to return to work, the technical support team needed to hire someone who could perform his duties immediately, and the company could not "work him back into the budget."  Id at paras. 34-35.

Snow acknowledges that BeyondTrust provided him with the full twelve weeks of FMLA leave to which he was entitled and terminated his employment only after that leave period had expired.  Id. at para. 52.  He also acknowledges that he was unable to return to work at the end of that leave period.  See, e.g., Complaint at paras. 4, 26, and 30.  See also Plaintiff's Objection (document no. 11) at 4.

### The Family and Medical Leave Act

The FMLA includes two types of provisions: "those establishing substantive rights and those providing protection for the exercise of those rights."  Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir.

2005).  Among those substantive rights is the right of a qualified employee to take up to twelve weeks of leave during any twelve-month period for a variety of reasons, including those related to a serious health condition.  29 U.S.C. § 2612(a)(1)(D).  Moreover, upon returning to work at the expiration of FMLA leave, the employee must be restored to either his or her former position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority.  29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.100(c).  As the court of appeals has noted,

> These rights are essentially prescriptive, setting substantive floors for conduct by employers, and creating entitlements for employees.  As to these rights, therefore, the employee need not show that the employer treated other employees less favorably, and an employer may not defend its interference with the FMLA's substantive rights on the ground that it treats all employees equally poorly without discriminating.
>
> In such cases, the employer's subjective intent is not relevant.  The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA — for example, a twelve-week leave or reinstatement after taking a medical leave.

Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998) (citations and internal punctuation omitted).

In addition to providing the entitlements discussed above, the FMLA also prohibits an employer from: (a) interfering with an employee's exercise of those rights, and (b) discriminating against an employee for having exercised those rights. See 29 U.S.C. § 2615(a). See generally Pierce v. Alice Peck Day Mem'l Hosp., No. CIV. 00-318-M, 2002 WL 467125, at *5 (D.N.H. Mar. 11, 2002) ("An employer may not interfere with, restrain, or deny the exercise by employees of the rights conferred by the FMLA, and may not discriminate against an employee for having exercised those rights.  Nor may employers use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.") (citations and internal punctuation omitted).  So, if an employee claims his employer unlawfully discriminated against him for having taken FMLA leave, the employer's subjective intent/motivation is relevant.  See, e.g. Hodgens, 144 F.3d at 160 ("Hodgens claims that his termination violated the FMLA because it was prompted by the fact that he took sick leave to which he was entitled under the statute.  In such a case, the employer's motive is relevant, and the issue is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.").

Importantly, however, "although an employee who properly takes FMLA leave cannot be discharged for exercising a right provided by the statute, she nevertheless can be discharged for independent reasons." Henry v. United Bank, 686 F.3d 50, 55 (1st Cir. 2012). See also 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition . . . the employee has no right to restoration to another position under the FMLA.").

## Discussion

As noted above, Snow brings two claims against his former employer. First, he says BeyondTrust interfered with, restrained, and/or denied his exercise of rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1). Second, he claims BeyondTrust retaliated against him for having exercised his FMLA rights and used his invocation of those rights as a factor in its decision to terminate his employment, in violation of 29 U.S.C. § 2615(a)(2).

I.   Count One - Unlawful Interference.

To withstand BeyondTrust's motion to dismiss his FMLA interference claim, Snow's complaint must plausibly allege that:

(1) he was eligible for the FMLA's protections; (2) BeyondTrust was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave BeyondTrust notice of his intention to take leave; and (5) BeyondTrust denied him FMLA benefits to which he was entitled.  See Gallagher v. Unitil Serv. Corp., No. 14-CV-20-SM, 2015 WL 5521794, at *13 (D.N.H. Sept. 17, 2015).  See also See Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 722 (1st Cir. 2014)); Chacon v. Brigham & Women's Hosp., 99 F. Supp. 3d 207, 213 (D. Mass. 2015).

Critically, however, Snow's complaint lacks any plausible allegation(s) relating to that fifth essential element: that BeyondTrust denied him any FMLA benefits to which he was entitled.  Indeed, the complaint acknowledges that BeyondTrust afforded Snow the full twelve weeks of leave it was obligated to provide.  See, e.g., Complaint at paras. 51-52 (noting that BeyondTrust terminated his employment after he completed his 12-week FMLA leave period and remained unable to return to work).

Consequently, Snow's FMLA interference claim (count one) must necessarily be dismissed for failure to state a claim. See, e.g., Limoli v. Delta Air Lines, Inc., No. 18-CV-10561-FDS, 2019 WL 6253269, at *5-6 (D. Mass. Nov. 22, 2019) ("[B]ecause

she received all the FMLA benefits to which she was entitled, [plaintiff's] FMLA interference claim must fail."); Federico v. Town of Rowley, No. CV 15-12360-FDS, 2016 WL 7155984, at *6 (D. Mass. Dec. 7, 2016) (same).

II.    Count Two - Unlawful Discrimination/ Retaliation.

Next, Snow alleges that BeyondTrust retaliated against him for having taken FMLA leave and unlawfully terminated his employment as a direct consequence of his having availed himself of that FMLA benefit.  To prevail upon an FMLA retaliation claim, a plaintiff must establish that: "(1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment action; and (3) there was a causal connection between that adverse action and his protected conduct." McMillen v. Concord Hosp., No. 12-CV-077-SM, 2014 WL 4715733, at *5 (D.N.H. Sept. 22, 2014) (citing Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 113-14 (1st Cir. 2006)).

Parenthetically, the court notes that the elements listed above are those necessary to establish a prima facie claim of FMLA retaliation.  See, e.g., Carrero-Ojeda, 755 F.3d at 719. But, the court of appeals has made clear a "plaintiff need not

11

plead facts sufficient to establish a prima facie case at the pleading stage." Id. Rather, "the elements of a prima facie case are useful as a prism to shed light upon the plausibility of a plaintiff's claim." Id. (citations and internal punctuation omitted). That is, to be sure, a subtle, if not confusing, point. It is, however, sufficient to note that to survive a motion to dismiss, a plaintiff alleging FMLA retaliation must plausibly allege some causal connection between an adverse employment action and their FMLA-protected conduct. See, e.g., Germanowski v. Harris, 854 F.3d 68, 74 (1st Cir. 2017); Haglund v. Estee Lauder Companies, Inc., 466 F. Supp. 3d 292, 298 (D. Mass. 2020).

Here, is support of his claim that there was a causal connection between his having taken 12 weeks of FMLA leave and his subsequent firing, Snow says:

> The Complaint plausibly alleges that Plaintiff requested and used protected leave, provided updated medical documentation, sought additional medically recommended time related to medication change and mental health treatment, and was then terminated after Defendant stated that it had waited long enough and needed someone immediately. That is sufficient to state an FMLA retaliation claim.

12

> . . . On December 7, 2023, Defendant requested updated information and stated that HR would determine next steps.  On December 8. 2023, Plaintiff's provider completed the Work Release Form stating that Plaintiff was unable to return until January 15, 2024.  On December 19, 2023, Defendant terminated Plaintiff and allegedly referenced the amount of time it had already "waited."  That is not a timing-only theory.  It is a factual theory that <u>Defendant reacted adversely to Plaintiff's continued need for leave</u> and <u>inability to return on Defendant's preferred timeline</u>.

Plaintiff's Objection (document no. 11) at 5-6 (emphasis supplied).  <u>See also</u> Plaintiff's Surreply (document no. 13) at 2.  As Snow himself seems to concede, BeyondTrust was not reacting to his having taken FMLA leave, but rather to his inability to return to work at the completion of that leave.

Aside from the temporal proximity between Snow's having taken FMLA leave and his subsequent discharge, the complaint includes no factual allegations arguably linking BeyondTrust's decision to fire him with his invocation of rights under the FMLA.  In that sense, Snow's complaint is similar to that presented in <u>Carrero-Ojeda</u>, which the court of appeals determined was subject to dismissal for failure to plausibly allege a viable FMLA retaliation claim:

13

> While temporal proximity is one factor from which an employer's bad motive can be inferred, by itself, it is not enough — especially if the surrounding circumstances undermine any claim of causation.
>
> Carrero gives us no facts beyond the timing of her discharge — e.g., no negative comments, complaints, or expressions of reluctance by her superiors or co-workers about her FMLA leave-taking, no discussion of her FMLA leave status in performance reviews, etc. — that would lead us to think that defendants took her FMLA requests or leave status into account when deciding to discharge her.

Carrero-Ojeda, 755 F.3d at 720 (citations omitted).

According to the complaint, after Snow completed his FMLA leave, he remained unable to return to work.  But, BeyondTrust's support team "needed someone who could perform support duties immediately."  Complaint at para. 35.  There is no suggestion that BeyondTrust was unprepared to have Snow return to his position at the conclusion of his FMLA leave.  But, when he was unable to do so, BeyondTrust made the "business decision" to terminate his employment.  Id. at paras. 15, 34, 58.  The only plausible reading of the complaint suggests that it was Snow's inability to return to work at the end of his FMLA leave that prompted BeyondTrust to terminate his employment - not any retaliatory motive in response to Snow's invocation of his FMLA rights.  Under such circumstances, an employer is permitted to

14

fire an employee.  See, e.g., Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 424–25 (1st Cir. 2014) ("We have held that an employee is not entitled to reinstatement under the FMLA if he is unable to return to work until after the expiration of his leave."); Brown v. Juniper Networks, Inc., 405 F. Supp. 3d 235, 239 (D. Mass. 2019) ("An employee has no right to reinstatement, however, if she does not return when her leave period expires."); Green v. New Balance Athletic Shoe, Inc., 182 F. Supp. 2d 128, 140 (D. Me. 2002) ("By the same token there is no remedy under the FMLA for Plaintiff's termination, since Defendant had the right to terminate her once she did not return to work after her leave had expired.").  See also 29 C.F.R. § 825.216(c).

Here, as in Carrero-Ojeda, Snow "calling [his] discharge FMLA retaliation does not make it so," id. at 720, and his complaint "offers too little to connect [his] taking of FMLA leave and [his] termination to push [his] claim across the plausibility threshold," id. at 719.

15

## Conclusion

For the foregoing reasons, Snow's claim that BeyondTrust interfered with his rights under the FMLA (count one) must, necessarily, be dismissed for failure to state a claim.  His claim that BeyondTrust retaliated against him for having invoked his FMLA rights (count two) similarly fails to plausibly allege all the essential elements of a viable claim.  Necessarily, then, that claim must also be dismissed - albeit without prejudice.  Given Snow's pro se status, he will be afforded the opportunity to amend his complaint to adequately and plausibly assert the essential elements of a viable FMLA retaliation claim, focusing, in particular, on evidence of a causal connection between his invocation of his FMLA rights and BeyondTrust's subsequent decision to terminate his employment.

BeyondTrust's Motion to Dismiss (**document no. 8**) is granted, as follows: count one of Snow's complaint (FMLA interference) is dismissed with prejudice; count two of that complaint (FMLA retaliation) is dismissed, without prejudice and with leave to amend.  Provided he can do so in a manner consistent with the requirements of Fed. R. Civ. P. 11, Snow may file an amended complaint on or before April 30, 2026, that

16

adequately and plausibly alleges facts sufficient to state a viable FMLA retaliation claim.[1]

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 2, 2026

cc:  Kyle Snow, pro se
     Counsel of Record

---

[1]    For plaintiff's benefit, the court notes that Rule 11 of the Federal Rules of Civil Procedure provides, in part, that by filing a complaint, an attorney or unrepresented party certifies to the court that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  In short, a party certifies that there is evidentiary support for all factual claims made in the complaint and that such claims are, to the best of that party's knowledge and belief, true.  Sanctions apply for Rule 11 violations.

17