UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kyle Snow,
Plaintiff

v.

Case No. 25-cv-548-SM-TSM
Opinion No. 2026 DNH 114

BeyondTrust Corporation,
Defendant

**O R D E R**

Kyle Snow brings this action against his former employer, BeyondTrust. In his original complaint, Snow advanced two claims: first, that BeyondTrust interfered with his right to take leave under the Family and Medical Leave Act ("FMLA") (count one); and, second, that BeyondTrust then terminated his employment in retaliation for having taken FMLA leave (count two). By prior order (document no. 14), the court dismissed count one for failure to state a viable claim (since Snow concedes that BeyondTrust afforded him full FMLA leave). Although count two similarly failed to set forth the essential elements of a viable claim, the court allowed Snow the opportunity to file an amended complaint to address the shortcomings noted by the court and to properly articulate a viable retaliation claim.

Snow has filed an Amended Complaint (document no. 15) and BeyondTrust has again moved to dismiss, asserting that the amended complaint, like its predecessor, fails to state the essential elements of a viable claim. For the reasons discussed, that motion is granted.

## Standard of Review

As noted in the court's prior order, to survive defendant's motion to dismiss, the amended complaint must include well-pled (i.e., non-conclusory, non-speculative) factual allegations as to each of the essential elements of a viable claim that, if assumed to be true, allow the court to draw the reasonable and plausible inference that the plaintiff is entitled to the relief sought. See Tasker v. DHL Retirement Savings Plan, 621 F.3d 34, 38-39 (1st Cir. 2010).

## Background

Accepting the complaint's factual allegations as true - as the court must at this juncture - the relevant background is as follows. Snow worked for BeyondTrust for approximately seven years as a technical support engineer. He performed his job well and each year he received a merit-based salary increase. In 2023, he suffered from serious mental health issues and required medical leave. In September of that year, he applied

for leave under defendant's FMLA and short term disability policies. That request was processed through Symetra, BeyondTrust's leave administrator, and Snow was approved for FMLA leave for the twelve-week period extending from September 14 through December 6, 2023. Amended Complaint (document no. 15) at para. 32. On November 2, 2023, Snow was reminded that his FMLA leave would expire in about four weeks and unless he was approved for additional leave or on an excused absence, he would likely be expected to return to work on that date. See Email entitled "Exhaustion of Leave" from Symetra to Kyle Snow (document no. 9-3).

On December 7, 2023, after Snow's FMLA leave had expired, BeyondTrust's leave of absence administrator, Rakeyla Young, contacted Snow about his return to work. She noted that Snow's medical providers had not yet released him to work and she asked about Snow's anticipated return. She also requested additional medical information from his healthcare providers. Amended Complaint at paras. 37-39. See also Email from Rakeyla Young to Snow (Dec. 7, 2023) (document no. 1-3). Ms. Young also recommended that Snow explore the availability of long-term disability since "your healthcare provider hasn't released you to return and is extending your leave past the supported time of short-term disability." Id. Finally, she told Snow that she

would inform BeyondTrust's human resources administrator of their conversation to "figure out the next steps as a company." Id.

According to Snow, later that day (December 7), he contacted Ms. Young and informed her that:

> after meeting with his primary care provider, the provider believed Plaintiff should be reassessed in approximately six weeks following an adjusted treatment plan, while also allowing for updates if an earlier time could work.
>
> Plaintiff stated that he had provided the return-to-work paperwork to his provider and that the provider expected to have it completed by the end of the next business day.
>
> Plaintiff also stated, "In terms of the next steps of advice within the company I will await your updates."

Amended Complaint at paras. 45-47. Thus, says Snow, he "did not simply remain absent on his own initiative, refuse to return, or ignore work." Id. at para. 48.

The following day (December 8, 2023), Snow's healthcare provider completed a work release form, stating that Snow was not yet able to return to work and would need an additional six weeks of leave beyond the expiration of his FMLA leave - that is, through January 15, 2024. Amended Complaint at paras. 52-53. See also Work Release Form (document no. 1-3) at 5.

According to Snow, BeyondTrust "therefore knew, while deciding what to do, that Plaintiff remained under active medical care and had submitted updated medical documentation during a temporary treatment and reassessment period." Amended Complaint at para. 56. There is, however, no suggestion anywhere in the amended complaint that BeyondTrust approved (or that Snow even sought) any additional medical leave beyond the expiration of his FMLA leave on December 7, 2023. Nor is there any indication that Snow inquired about the company's long-term disability policy, or that he sought any sort of accommodation. He simply represented (through his medical provider) that he could not return to work for another six weeks.

On December 19, 2023 - twelve days after Snow's FMLA leave had expired and while he remained unable to return to work - BeyondTrust's human resources representative contacted Snow and told him that the company had decided to terminate his employment. Amended Complaint at para. 57. Snow was told that the decision to fire him was a "business decision only" and not related to his performance. Id. at para. 58. He was also told that BeyondTrust had "already waited long enough" for him to return to work, the technical support team needed to hire someone who could perform his duties immediately, and the

company could not "work him back into the budget." Id at para. 59.

**The Family and Medical Leave Act**

As discussed more fully in the court's prior order, the FMLA prohibits an employer from: (a) interfering with an employee's exercise of the statute's substantive rights, and (b) discriminating against an employee for having exercised those rights. See 29 U.S.C. § 2615(a). See generally Pierce v. Alice Peck Day Mem'l Hosp., No. CIV. 00-318-M, 2002 WL 467125, at *5 (D.N.H. Mar. 11, 2002) ("An employer may not interfere with, restrain, or deny the exercise by employees of the rights conferred by the FMLA, and may not discriminate against an employee for having exercised those rights. Nor may employers use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.") (citations and internal punctuation omitted). Importantly, however, "although an employee who properly takes FMLA leave cannot be discharged for exercising a right provided by the statute, she nevertheless can be discharged for independent reasons." Henry v. United Bank, 686 F.3d 50, 55 (1st Cir. 2012). See also 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because

of a physical or mental condition . . . the employee has no right to restoration to another position under the FMLA.”).

**Discussion**

As noted above, Snow claims BeyondTrust retaliated against him for having exercised his FMLA rights and used his invocation of those rights as a factor in its decision to terminate his employment, in violation of 29 U.S.C. § 2615(a)(2). To prevail upon an FMLA retaliation claim, a plaintiff must establish that: “(1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment action; and (3) there was a causal connection between that adverse action and his protected conduct.” McMillen v. Concord Hosp., No. 12-CV-077-SM, 2014 WL 4715733, at *5 (D.N.H. Sept. 22, 2014) (citing Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 113-14 (1st Cir. 2006)) (emphasis supplied).

As the court noted in its earlier order, the elements listed above are those necessary to establish a prima facie claim of FMLA retaliation. See, e.g., Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 719 (1st Cir. 2014). But, the court of appeals has made clear that a “plaintiff need not plead facts sufficient to establish a prima facie case at the pleading stage.” Id. Rather, “the elements

of a prima facie case are useful as a prism to shed light upon the plausibility of a plaintiff's claim." Id. (citations and internal punctuation omitted). That is, to be sure, a subtle, if not confusing, point. It is, however, sufficient to note that to survive a motion to dismiss, a plaintiff alleging FMLA retaliation must plausibly allege some causal connection between an adverse employment action and their FMLA-protected conduct. See, e.g., Germanowski v. Harris, 854 F.3d 68, 74 (1st Cir. 2017); Haglund v. Estee Lauder Companies, Inc., 466 F. Supp. 3d 292, 298 (D. Mass. 2020).

Distilled to their essence, the facts alleged in the Amended Complaint reveal that Snow asked for and was granted the full 12 weeks of leave authorized under the FMLA; as the end of his leave approached, BeyondTrust reminded him that he was expected to return to work at the conclusion of that leave (December 7); once that leave had expired, BeyondTrust noted that his medical provider had not yet released him to return to work and suggested he explore long-term disability; the following day, Snow provided BeyondTrust with a letter from his medical provider saying that he could not yet return to work and needed an additional six weeks of leave; and, finally, roughly 10 days later after receiving that letter, BeyondTrust terminated Snow's employment.

In support of the claim that his amended complaint plausibly supports the inference that there was a causal connection between his use of 12 weeks of FMLA leave and BeyondTrust's decision to fire him roughly two weeks after that leave ended and he had still not returned to work, Snow says:

> During the termination call, Defendant's HR representative, Cassie Wortendyke, told Plaintiff that the decision was a "business decision only" and was not based on performance.
>
> During the same call, Defendant also told Plaintiff that it had already "waited long enough" for him, that the support team needed someone who could perform support duties immediately, and that the company could not "work [him] back into the budget."
>
> Those statements expressly referenced the amount of time Plaintiff had been out and Defendant's view that it needed immediate coverage.
>
> Defendant's statement that it had already "waited long enough" directly referenced Plaintiff's <u>leave-related absence</u> and supports a reasonable inference that Plaintiff's protected leave <u>and leave-related status</u> were negative factors in the termination decision.

Amended Complaint at paras. 58-61. More specifically, Snow argues:

> A reasonable inference in Plaintiff's favor is that Defendant viewed the length of Plaintiff's protected leave <u>and leave-related absence</u> as a burden and used it as a negative factor in the termination decision. The phrase 'waited long enough' directly references the time Defendant had been waiting for Plaintiff's return. Combined with Defendant's statements that it

> needed someone immediately and could not work Plaintiff back into the budget, the statement plausibly supports causation.

Plaintiff's Opposition Memorandum (document no. 17) at 2-3 (emphasis supplied). The court disagrees.

As BeyondTrust notes, Snow seems to conflate the concepts of protected FMLA leave with unprotected post-FMLA "leave-related absence" from work. The former cannot be considered by an employer when making employment related decisions, while the latter - that is, the inability to return to work following FMLA leave - is certainly a factor that an employer can consider when deciding whether or not to retain an employee. See, e.g., Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 424–25 (1st Cir. 2014) ("We have held that an employee is not entitled to reinstatement under the FMLA if he is unable to return to work until after the expiration of his leave."); Brown v. Juniper Networks, Inc., 405 F. Supp. 3d 235, 239 (D. Mass. 2019) ("An employee has no right to reinstatement, however, if she does not return when her leave period expires."); Green v. New Balance Athletic Shoe, Inc., 182 F. Supp. 2d 128, 140 (D. Me. 2002) ("By the same token there is no remedy under the FMLA for Plaintiff's termination, since Defendant had the right to

terminate her once she did not return to work after her leave had expired.”). See also 29 C.F.R. § 825.216(c).

While Snow disputes the precise timing of his potential ability to return to work, he unambiguously concedes that he was unable to return to work at the conclusion of his FMLA leave (and, in fact, never returned to work before BeyondTrust terminated his employment). The only indication that he provided to BeyondTrust of a potential return date was the Work Release Form submitted by his medical provider saying, unequivocally, that Snow was “unable to return to work until 1/15/24.” Work Release Form (document no. 1-3) at 5.[1]

---

[1] Snow now argues that the Work Release Form provided to BeyondTrust was unclear or ambiguous. In support of that claim, he has submitted a letter dated May 21, 2026, in which his medical provider says the letter he authored more than two years earlier in which he provided the January 15, 2024 return-to-work date was not intended as an unambiguous statement of when Snow could actually resume work. Instead, it was simply the date on which Snow next had an appointment with the medical provider. “If it was determined he could work sooner, updated paperwork could have been provided. The time away from work was intended to be temporary.” Letter from Adam Kurish, MD (document no. 17-1). Of course, because that letter was not provided to BeyondTrust until a few months ago (and not made a part of Snow’s amended complaint), it has little probative value and provides virtually no support for Snow’s claim that BeyondTrust’s subjective intent was to retaliate against him for taking FMLA leave, rather than its expressed intention to fill a vacant employment position that Snow could not return to in a timely manner.

Aside from the temporal proximity between Snow's having taken FMLA leave and his subsequent discharge, the amended complaint (like Snow's original complaint) includes no factual allegations arguably linking BeyondTrust's decision to fire him with his invocation of rights under the FMLA. As the court noted in its earlier order, Snow's amended complaint is similar to that presented in Carrero-Ojeda, which the court of appeals determined was subject to dismissal for failure to plausibly allege a viable FMLA retaliation claim:

> While temporal proximity is one factor from which an employer's bad motive can be inferred, by itself, it is not enough — especially if the surrounding circumstances undermine any claim of causation.
>
> Carrero gives us no facts beyond the timing of her discharge — e.g., no negative comments, complaints, or expressions of reluctance by her superiors or co-workers about her FMLA leave-taking, no discussion of her FMLA leave status in performance reviews, etc. — that would lead us to think that defendants took her FMLA requests or leave status into account when deciding to discharge her.

Carrero-Ojeda, 755 F.3d at 720 (citations omitted).

**Conclusion**

According to the amended complaint, after Snow completed his FMLA leave, he remained unable to return to work. And, his treating medical provider informed BeyondTrust that he was "unable to return to work until 1/15/24" - that is, nearly six

weeks beyond the expiration of Snow's FMLA leave. There is no suggestion that BeyondTrust was unprepared to have Snow return to his position at the conclusion of his FMLA leave. But, when he was unable to do so, BeyondTrust made the "business decision" to terminate his employment. Amended Complaint at para. 58. As BeyondTrust explained to Snow, its support team "needed someone who could perform support duties immediately." Id. at para. 59. The only plausible reading of the amended complaint suggests that it was Snow's inability to return to work at the end of his FMLA leave that prompted BeyondTrust to terminate his employment - not any retaliatory motive in response to Snow's invocation of his FMLA rights. Under such circumstances, an employer is permitted to fire an employee.

For the foregoing reasons, as well as those set forth in defendant's legal memoranda (documents no. 16-1 and 18), Snow's amended claim that BeyondTrust retaliated against him for having invoked his FMLA rights fails to plausibly allege the essential elements of a viable claim. Necessarily, then, that claim must be dismissed.

BeyondTrust's Motion to Dismiss the Amended Complaint (**document no. 16**) is granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

August 31, 2026

cc: Kyle Snow, pro se
Counsel of Record